


FILED
2015 Jul-06  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

FILED

2015 JUL -6  P 1: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ANTONIO CUNNINGHAM,**

    Plaintiff

v.

**DEWAYNE ESTES,**
**GUY NOE, SGT. RAY,**
**RANDY GRIFFITH,**
**CAPTAIN SMITH**

**JURY TRIAL DEMANDED**

CV-15-K-1127-NE

## COMPLAINT

### INTRODUCTORY AND JURISDICTIONAL STATEMENT

1. This is an action brought pursuant to 42 U.S.C. § 1983 alleging that plaintiff was deprived of his constitutional rights by defendants, acting under color of state law. This Court has jurisdiction over this matter pursuant to that statute and 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(a)(3) (civil rights).

2. Plaintiff is and was, at all times relevant, an inmate in the custody of the Alabama Department of Corrections (ADOC). He is currently housed in the Elmore Correctional Facility in Elmore, Alabama. However, at all times relevant to this action, he was housed in the Limestone Correctional Center (Limestone) in Harvest, Alabama within the Northeastern Division of the Northern District of Alabama. All the acts and omissions complained of herein occurred there.

3. Defendant, Dewayne Estes (Estes), was at all relevant times the warden at Limestone. As such, he was ultimately responsible for the protection of the inmates and for supervision of ADOC personnel there. He has since been transferred to the St. Clair Correctional Facility in Springville, Alabama. He is sued in his individual capacity.

4. Defendant, Guy Noe (Noe), was at all relevant times a corrections officer at Limestone. At the time of the incident giving rise to this litigation, he was a lieutenant. He has since been promoted to captain. He is sued in his individual capacity.

5. Defendant, Sgt. Ray (Ray), whose first name is not known to plaintiff, was at all relevant times a correctional offcer at Limestone. He is sued in his individual capacity.

6. Randy Griffith (Griffith) as at all relevant times a correctional officer at Limestone. He is sued in his individual capacity.

7. Captain Smith (Smith), whose first name is unknown to plaintiff, was at all relevant times a correctional officer at Limestone. He is sued in his individual capacity.

## FACTS

8. During the time he was housed at Limestone, plaintiff developed a relationship with another inmate there, Nakemah Grover. Mr. Grover is currently housed in the Holman Prison in Atmore, Alabama, serving three consecutive life sentences for two convictions of robbery in the first degree and one for sodomy in the first degree.

9. The relationship between plaintiff and Mr. Grover was, to say the least, stormy. Between September 6, 2012 and July 7, 2013, at least eight incidents involving physical violence, threats of physical violence, or both occurred between them. The last, on July 7, 2013, gives rise to this action.

10. On September 6, 2012, an argument between plaintiff and Mr. Grover escalated into a physical struggle. Mr. Grover had to be restrained by other inmates, during which time he threatened to "cut (plaintiff's) head off." Both were escorted to the captain's office where, in the presence of Capt. Smith, they began arguing again, with Mr. Grover threatening to kill plaintiff. Capt. Smith warned Mr. Grover that, if he did not stop threatening plaintiff, he would be placed in disciplinary segregation. Plaintiff requested of Captain Smith that he be moved to another side of the dorm so as not to be near Mr. Grover. He also stated to Mr. Grover that he did not want to be around him. Capt. Smith refused the request but, using derogatory language about


plaintiff being homosexual, ordered plaintiff to be placed in the segregation unit.

11. Despite plaintiff's request, at some point after he was released from segregation, he and Mr. Grover became cell mates. In, or about, January 2013, plaintiff and Mr. Grover had another argument. Both were taken before Noe and were shown a weight bar purportedly found by a correctional officer in plaintiff's box. Plaintiff had not put it there. Other inmates had reported that Mr. Grover was saying that he was going to "bust (plaintiff's) brains out" when he was asleep. Noe ordered Ray to separate them but Ray returned them to the cell together.

12. About one or two weeks later, plaintiff and Mr. Grover got into another altercation, resulting in both being placed in segregation. When they returned to the general population, they were not placed in the same cell, but remained on the same side of the dorm.

13. On, or about, April 13, 2013, plaintiff and Mr. Grover got into a fight in front of the captain's office and had to be separated by other inmates. Mr. Grover threatened to kill plaintiff. Officer Moore investigated and plaintiff again asked to be separated from Mr. Grover.

14. That night, plaintiff went to the shower. Mr. Grover approached him and asked to talk but plaintiff refused, asking Mr. Grover to stay away from him. While plaintiff was in the shower, Mr. Grover approached him, with a razor in his hand, and

plaintiff being homosexual, ordered plaintiff to be placed in the segregation unit.

11. Despite plaintiff's request, at some point after he was released from segregation, he and Mr. Grover became cell mates. In, or about, January 2013, plaintiff and Mr. Grover had another argument. Both were taken before Noe and were shown a weight bar purportedly found by a correctional officer in plaintiff's box. Plaintiff had not put it there. Other inmates had reported that Mr. Grover was saying that he was going to "bust (plaintiff's) brains out" when he was asleep. Noe ordered Ray to separate them but Ray returned them to the cell together.

12. About one or two weeks later, plaintiff and Mr. Grover got into another altercation, resulting in both being placed in segregation. When they returned to the general population, they were not placed in the same cell, but remained on the same side of the dorm.

13. On, or about, April 13, 2013, plaintiff and Mr. Grover got into a fight in front of the captain's office and had to be separated by other inmates. Mr. Grover threatened to kill plaintiff. Officer Moore investigated and plaintiff again asked to be separated from Mr. Grover.

14. That night, plaintiff went to the shower. Mr. Grover approached him and asked to talk but plaintiff refused, asking Mr. Grover to stay away from him. While plaintiff was in the shower, Mr. Grover approached him, with a razor in his hand, and

threatened to cut plaintiff's throat. He was told to leave by a corrections officer but returned a few minutes later, pushed plaintiff and threatened to kill him. Officers then locked him in his cell.

15. The next day, several corrections officers including Noe, officer Howard, Lt. Pickens and Sgt. Bragg discussed the situation. Lt. Pickens suggested that one, or both, be locked up until one was released for fear that one or both would be injured or killed. Noe decided not to act on Lt. Pickens's advice and told both plaintiff and Mr. Grover that he did not want to hear anything else from them.

16. On, or about, July 5, 2013, another inmate, John F. Burton, learned that Mr. Grover and in mate Leon McGhee were plotting to cut his and plaintiff's throats. He reported this information to Griffith, who told him to "get away from this cage and me." On information and belief, Griffith failed to report this to anyone at Limestone.

17. On July 7, 2013, plaintiff was speaking with another inmate, Willie Walker, when Mr. Grover came up behind him and cut his throat with a razor, cutting or severing his carotid artery and his jugular veins. He required blood transfusions by paramedics at the institution and then had to be airlifted to Huntsville Hospital for surgery.

18. The policy at Limestone at the time was for inmate trustees to distribute razors to the inmates. No accounting of which inmates received razors was kept and

no effort was made to recover those distributed.

19. Defendants had received numerous requests from plaintiff that he and Mr. Grover be separated, had numerous reports of physical violence between plaintiff and Mr. Grover and reports of Mr. Grover threatening plaintiff. In particular, as outlined above, Mr. Grover threatened on one occasion to cut plaintiff's head off and, on another occasion, approached plaintiff with a razor blade in his hand. Nevertheless, defendants did nothing to keep Mr. Grover away from plaintiff or to insure that Mr. Grover did not have any weapons available with which he could injure plaintiff. They specifically took no action to insure that Mr. Grover not be in a position to attack plaintiff with a razor.

20. Plaintiff, as a consequence of his injuries, nearly died, has permanent scars and has suffered severe and ongoing emotional distress.

21. Plaintiff alleges that defendants, individually and collectively, were deliberately indifferent to a known and ongoing threat to his well being and that their failure to act to protect him was the proximate cause of his injuries.

22. The failure of the defendants, individually and collectively, to protect plaintiff from the threat posed by Mr. Grover violated his right to be free from cruel and unusual punishment, as protected by the Eighth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

**WHEREFORE,** plaintiff seeks the following relief:

1. A judgment against defendants, separately and severally, for such compensatory and punitive damages as a jury may award;

2. His reasonable costs for pursuing this action; and

3. Such other, further and different relief as to which he may be entitled.

*Antonio Cunningham* #234092
ANTONIO CUNNINGHAM
AIS 234092
Elmore Correctional Facility
3520 Marion Spillway Road
Elmore, AL 36025
Pro Se

*PLAINTIFF DEMANDS TRIAL BY JURY*

This document was prepared with the assistance of a licensed Alabama lawyer pursuant to Rule 1.2(c), Alabama Rules of Professional Conduct.